UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHRAF RASHID,<br><br>           Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>           Defendant. | Case No.: 20cv573-L-DEB<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY [ECF No. 9]** |

Pending before the Court in this lemon law action is Defendant's motion to compel arbitration and stay action. Plaintiff filed an opposition and Defendant replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Defendant's motion is denied.

I.   BACKGROUND

On September 6, 2019, Plaintiff leased a 2020 BMW M340I, vehicle identification number WBA5U7C01LA286757 ("Vehicle"), from BMW of Escondido ("Dealer"). The Vehicle was manufactured and/or distributed by Defendant BMW of North America, LLC ("BMW NA"). Plaintiff entered a lease agreement ("Lease") with BMW Financial Services NA, LLC, ("BMW FS") for the Vehicle, which set forth information about financing, insurance, and warranties. (Mot. Ex D ¶ 38). Along with these provisions, the

Lease included an arbitration provision ("Arbitration Clause"). The provision stated, in pertinent part, that:

> Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial.
>
> "Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your …affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, …or condition of this Vehicle… (including any such relationship with third parties who do not sign this Lease.)

(Lease Mot. Ex D ¶ 38).

With regard to warranties, the Lease stated: "The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty." (*Id*. at ¶16). No express warranties were listed, and the Vehicle was new, therefore only the standard manufacturer's new vehicle warranty applied. The Lease made the following disclaimer:

> UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

(Mot. Ex. D ¶ 38).

As anticipated in the Lease, Defendant BMW NA, the manufacturer of the Vehicle, issued an express written warranty ("Warranty") to Plaintiff. The Warranty stated that Defendant BMW NA guaranteed the utility and performance of the Vehicle and Plaintiff could deliver the Vehicle to Defendant's representative for repair services if defects arose with the Vehicle during the warranty period. While under warranty, the Vehicle demonstrated defects including a failing sunroof and recurrent rattling from the sunroof

area. Plaintiff delivered the Vehicle to Defendant's authorized repair facility on five separate occasions, but the facility was unable to repair the nonconformities despite the Vehicle being in the shop for twenty-four days.

## II.  PROCEDURAL BACKGROUND

On February 20, 2020, Plaintiff filed a complaint in the California Superior Court for the County of San Diego against BMW NA alleging violations of the Song-Beverly Consumer Warranty Act, (Cal. Civ. Code § 1790 et. Seq.) and violations of California Business and Professions Code §17200. He claims his damages exceed $25,000 and expressly seeks the entire purchase price of the BMW. (*Id*.at 3-4.)  He also seeks statutory penalties of two times his actual damages pursuant to Cal. Civ. Code § 1794(c) and (e), actual, consequential, and incidental damages, restitution, injunctive relief, and attorneys' fees.  (*Id.* at 3-8.)

 Defendant removed this action from State court under 28 U.S.C. §§ 1332, 1443(1) and 1441.

## III.  LEGAL STANDARD

The Federal Arbitration Act (FAA) governs enforceability of arbitration agreements in contracts involving interstate commerce, with limited exceptions. *See* 9 U.S.C. § 1 et seq. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. § 2.  There is a "liberal federal policy favoring arbitration" reflected by the FAA, along with the principle that arbitrability must be determined with reference to state contract law.  *Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1126 (9th Cir. 2013). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "As federal substantive law, the FAA preempts contrary state law," but state contract law governs the enforceability of arbitration agreements in contracts involving interstate commerce.  *Mortensen v. Bresnan Comm'cns, LLC,* 722 F.3d 1151, 1158 (9th Cir. 2013).  "The party seeking to compel

arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Jurosky v. BMW of North America*, 441 F.Supp. 3d 963 (2020) (citing *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3s 1279, 1283.)

IV.   DISCUSSION

Defendant seeks an order compelling Plaintiff to arbitrate his claims under the FAA arguing that the Arbitration Clause contained within the Leases is valid and enforceable as to any claims Plaintiff makes with respect to the Vehicle's lease or condition. (Motion at 6-7).  Although Defendant is not a signatory to the Lease, it claims it may compel arbitration under the theory of equitable estoppel, or in the alternative, as a third-party beneficiary of the Agreement.  Defendant requests the Court stay this matter while the motion to compel arbitration is pending, and any subsequent arbitration is ongoing. (Mot. at 20.)

The contractual right to arbitration generally "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp*., 4 F.3d 742, 744 (9th Cir. 1993). However, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." See *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *Kramer*, 705 F.3d at 1128. "General contract principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co*., 555 F.3s 1042, 1045 (9th Cir. 2009).

  *A. Equitable Estoppel*

Under California law, the following test applies when determining if a nonsignatory may compel arbitration under a theory of equitable estoppel:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially

> interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Kramer,* 705 F.3d at 1128 (citing *Goldman*, 173 Cal.App.4th at 221.)

### 1. Intimately Founded In and Intertwined With the Lease

"Equitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant." *Goldman*, 173 Cal.App.4th at 229-30. It is not enough that claims simply make reference to an agreement that contains an arbitration clause, instead, the claims must be "intimately founded in and intertwined with the underlying contract obligations." *Id*. at 221.

Defendant argues that Plaintiff's claims against BMW NA would not exist without his agreement to all the terms of the Lease, therefore the claims arise out of and relate to the Lease. (Oppo. at 9). According to Defendant, the Lease specifically references BMW NA's express Warranty, and but for the lease transaction, Plaintiff would not have received the Warranty. (Reply at 4).

Plaintiff responds that his claims do not arise from the Lease, but instead are based on the express written Warranty. Plaintiff asserts five claims against Defendant under Song-Beverly Act, including (1) failure to repair or replace the subject Vehicle, (2) failure to commence repairs within a reasonable time (3) failure to provide authorized repair facilities sufficient service literature and parts to effect repairs; (4) breach of express written warranty; and (5) breach of the implied warranty of merchantability, along with a claim for violation of Business and Professions code. (Complaint).

The Court evaluates each claim in turn.

In Claim 1, Plaintiff contends that the Vehicle contained or developed defects including a failing sunroof and recurrent rattling from the sunroof area which were not fixed despite repeated attempts at authorized repair shops. (Complaint ¶ ¶ 10-12.) According to Plaintiff, the defects and failure to repair constitute a breach of the written

Warranty he received in connection with the lease of vehicle under California Civil Code section 1793.2. (*Id*.)  The Lease does not address how or where Plaintiff is to have the Vehicle repaired, but instead covers matters pertaining to the financing of the Vehicle, insurance, maintenance, wear and tear, traffic tickets, the value of the Vehicle, and the Arbitration Clause.  (Mot. Ex. D.) Therefore, claims concerning the failure of the authorized shop to repair the Vehicle in a timely manner must be analyzed with reference to the Warranty.  Claim of this nature do not rely on the terms of the Lease nor are they inextricably bound up with the obligations imposed by the Lease. *Goldman,* 173 Cal.App.4th at 229-30.

In Claim 2, Plaintiff alleges a violation of California Civil Code section 1793.2(b), claiming that Defendant and the authorized repair shops failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days. (Complaint ¶¶ 14-17). Whether repairs were conducted in a timely manner is not related to the obligations imposed by the Lease. Instead, this is an issue resolved with reference to the terms of the Warranty.

In Claim 3, Plaintiff asserts a violation of California Civil Code section 1793.2(a)(3), alleging that Defendant failed to make sufficient service literature and replacement parts available to its authorized service and repair facilities during the express warranty period. Whether sufficient literature and parts were provided is not a matter that relies on the terms of the Lease, nor is it inextricably entwined with the obligations imposed on the parties to the Lease.

In Claim 4, Plaintiff alleges that Defendant breached the express written warranty under California Civil Code 1791.2(a) and 1794 by failing to repair the Vehicle each time Plaintiff delivered the Vehicle to the representatives. (Complaint ¶ 22). As stated above, failure to repair is not a claim that rests on the terms of the Lease, nor is it inextricably intertwined with those terms.

In Claim 5, Plaintiff asserts that the Vehicle defects violated the implied warranty of merchantability under Civil Code section 1791.1 and 1792.  (Complaint ¶ 28). The

Lease includes a disclaimer making no warranties of merchantability, therefore this claim cannot rest on the Lease.

As detailed above, the claims do not rely on the terms of the Lease, nor are the claims "intimately founded in and intertwined with" the Lease obligations. *See Kramer*, 705 F.3d at 1132 (equitable estoppel inapplicable because plaintiff's claims did not "intimately rely on the existence" of a purchase agreement, nor did they reference the purchase agreement.)  Instead, Plaintiff's claims concern the malfunctioning of the sunroof and are covered by the Warranty, a separate and distinct agreement from the Lease.

Although not binding, the reasoning of *Jurosky*, is informative. There, the district court noted that the automobile purchase agreement included a provision "in which the dealership disclaims all warranties, and states '[t]his provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide" thereby differentiating the Dealer warranty from BMW's warranty. *Jurosky*, 441 F.Sup.3d at 969. Similarly here, the Agreement states that:

> UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

(Lease, Mot. Ex D ¶ 38).

The Lessor, BMW Financial Services, thereby distinguished its representations from those of the new vehicle express warranty that was to be issued by Defendant BMW NA.

Defendant argues that Plaintiff's claims rely on the Lease, because without the Lease there would be no Warranty.  (Mot. at 7).  The Ninth Circuit has dispelled the same argument, "[w]e expressly rejected [Defendant's] argument that the plaintiffs' claims

were necessarily intertwined with the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred." *Murphy v. DirectTV, Inc.,* 724 F.3d 1218 (9th Cir. 2013). Instead, the Court must look to California contract law and ask whether "Plaintiff would have a claim independent of the existence of the Purchase Agreement." *Kramer*, 705 F.3d at 1131.  Although Plaintiff would not have had a use for the warranty provided by BMW NA had he not financed a car through BMW FS, the substance of his claims for failure to repair or replace, and breach of warranty, are independent of the Lease terms. Plaintiff could pursue claims under the warranty without a lease agreement existing. *Id*.

Other courts have determined that claims such as breach of an express written warranty, and breach of the implied warranty of merchantability under the Song-Beverly Act did not rely on a purchase agreement, therefore a non-signatory manufacturer could not enforce an arbitration clause contained within a purchase agreement between buyer and seller.  *See Kim v. BMW of North America, LLC*, 408 F.Supp.3d 1155 (C.D. Cal. 2019); *Roth v. Jaguar Land Rover North America, LLC*, 2017 WL 10545074 (C.D. Cal 2017.)  As in these cases, Plaintiff's claims do not rely on the terms of the Lease.

For the foregoing reasons, Defendant has not shown by a preponderance of the evidence that equitable estoppel applies under the first prong of the *Kramer* test. Plaintiff's claims do not rely on the terms of the Lease, nor are they "intimately founded in and intertwined with" the Lease. *Kramer,* 705 F.3d at 1128.

*2. Interdependent and Concerted Misconduct Founded In or Intimately Connected With the Obligations of the Underlying Lease*

The second element of the *Kramer* test is not present here because Plaintiff has not alleged interdependent and concerted misconduct by BMW NA, and a signatory.  705 F.3d at 1131("The doctrine of equitable estoppel applies when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory *and* another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.") The only

defendant in the present case is BMW NA, a non-signatory to the Lease that contains the arbitration clause.  As a result, there are no claims of interdependent misconduct or claims against a signatory which are inherently inseparable from claims against a non-signatory.

Moreover, under California law, Plaintiff would need to make allegations of interdependent misconduct that were founded in or intimately connected to the obligations in the Lease before BMW NA could enforce the arbitration.  "[A] mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory" is not enough.  *Kramer*, 705 F.3d at 1132-33.

For the foregoing reasons, Defendant has not shown by a preponderance of the evidence that it is entitled to enforce the Arbitration Clause based on a theory of equitable estoppel.

### *B. Third Party Beneficiary*

BMW argues in the alternative that it may compel arbitration as a third-party beneficiary because it falls within the class of persons or entities for whom the Arbitration Clause was intended. (Mot. at 18-19).  Defendant contends that BMW of Escondido assigned the Lease to BMW Financial Services NA, LLP, a wholly owned subsidiary of BMW NA, therefore, "BMW NA therefore falls within the class of persons (i.e., assigns) whom the Arbitration Clause was intended to benefit." (*Id.*)

California law states that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal.Civ.Code § 1559.  Defendant bears the burden of proving that they are a third-party beneficiary of the Lease. *See Garcia v. Truck Ins. Exch.*, 36 Cal.3d 426 (1984). Courts must "interpret a contract to give effect to the mutual intention of the parties at the time they formed the contract." *Camacho v. Target Corp.*, 24 Cal. App. 5th 291, 306 (2018). (citing Civ. Code, § 1636; *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524).  The intention of the parties is discerned from the written contract, but the court may also look to the subject matter of the agreement along with the circumstances under which the contract

was made. *Id*. Words are given their plain meaning, unless they have been given specialized meaning by the parties. *Id*. (citing Civ. Code, § 1644; *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* 3 Cal.5th 744, 752 (2017).)

As the manufacturer and distributor of the Vehicle, Defendant BMW NA enjoys an incidental benefit from the agreement between Plaintiff and BMW FS. However, it is not enough that a contract results in benefits to a third-party. *Matthau v. Super. Ct*., 60 Cal.Rptr.3d 93, 99 (2007)("The mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary.'") "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered. [Citation.]" *Eastern Aviation Group, Inc. v. Airborne Express, Inc*. (1992) 6 Cal.App.4th 1448, 1452.

Looking at the Lease as a whole, under the circumstances under which it was entered, reveals that Plaintiff did not intend to confer the benefit of the Arbitration Clause within the Lease on Defendant. Plaintiff entered a Lease with the Dealer for the BMW Vehicle. (Mot. Ex D at 1). The Lease was executed by BMW Financial Services, and the Agreement stated that for purposes of the agreement, "Assignee" refers to BMW Financial Services. (*Id*.) The boilerplate Arbitration Clause states that Plaintiff and the Dealer must arbitrate any claim Plaintiff raises against the Dealer, and its:

> employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease).

(*Id*. at 6).

The provision, read in its entirety, states that claims Plaintiff raises against a third-party are subject to the Arbitration Clause *only if* the claims are asserted "in connection with a Claim I assert against you." The Agreement defines "you" as the Lessor or the Lessor's assignee, in this case BMW of Escondido, or its assignee, BMW Financial

Services. (*Id*. at 1). Plaintiff does not assert any claims against either of these parties, therefore, a third-party like BMW NA cannot enforce the Arbitration Clause. *Eastern Aviation Group, Inc.*, 6 Cal.App.4th at 1452 (1992). This language does not indicate an intent to confer a benefit to BMW NA. *See Jurosky v. BMW of North America., LLC*, 441 F.Supp. 3d 963, 975 (S.D. Cal. 2020). Instead, as the Court in *Kim* determined, BMW FS did not derive a benefit from the warranty agreement, and those agreements typically follow the vehicle even if it is resold, removing the financing company completely. 408 F.Supp. 3d at 1159.

Defendant's reliance on *Ronay Family Ltd P'ship v. Tweed*, 216 Cal.App.4th 830, 836 (Ct. App. 2013) is unavailing. In *Ronay,* a financial planner and his firm were compelled to arbitrate even though the agreement was between an investor and a broker, because the financial planner was deemed to be an agent of the broker. *Id*. at 838-39. The court held that the basis of the claims was the agreement signed by the broker and investor which bound the financial advisor and his firm as intended third-party beneficiaries. *Id*. Here, Plaintiff's claims are not based on the Lease, but instead are based on the express written Warranty, as noted above. The plain language of the Lease demonstrates that Defendant is not an intended third-party beneficiary. There was no intent to benefit non-signatory third-party Defendant BMW NA in the Lease in the same manner that the financial planner and his firm were benefitted in *Ronay*. Therefore, *Ronay* is unpersuasive.

For the above reasons, BMW NA has not shown by a preponderance of the evidence that it is a third party beneficiary that may compel arbitration.

//
//
//
//
//
//

V.   CONCLUSION

For the foregoing reasons, BMW's Motion to Compel Arbitration and Stay All Proceedings is **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 23, 2021

_____
Hon. M. James Lorenz
United States District Judge